IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

**NAUTILUS INSURANCE COMPANY,**

        Plaintiff,

v.                                      Civil Action No.: 5:19-CV-210 (Bailey)

**GC&P DEVELOPMENT, LLC, GC&P AGGREGATES, LLC,
GACS, L.P., KEVIN P. COYNE, SR., individually,
DOUG GRAYSON, ZACHARY LOUGHMAN,
and KATHLEEN LOUGHMAN**

        Defendants.

[ELECTRONICALLY FILED — Jul 02 2019 — U.S. DISTRICT COURT — Northern District of WV]

**COMPLAINT FOR DECLARATORY RELIEF**

Nautilus Insurance Company ("Nautilus") by and through counsel, Lee Murray Hall, Sarah A. Walling and Jenkins Fenstermaker, PLLC, pursuant to Rule 57 of the Federal Rules of Civil Procedure and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, respectfully requests that this Court declare the rights and responsibilities of the parties relative to a contract of insurance issued to GACS, L.P. ("GACS"). In support of its Petition, Nautilus states as follows:

**PARTIES**

1. Nautilus is an Arizona corporation engaged in the business of insurance, and is a surplus lines carrier with policies of insurance issued in the State of West Virginia. Its principal place of business is located at 7233 E Butherus Dr., Scottsdale, Arizona 85260.

2. Defendant GC&P Development, LLC is a limited liability corporation believed to be organized under the laws of the State of West Virginia, with its principal place of business located at 99 Aaronwoods Ct., Wheeling, West Virginia 26003.

1

3. Defendant GC&P Aggregates, LLC is a limited liability corporation believed to be organized under the laws of the State of West Virginia, with its principal place of business located at 99 Aaronwoods Ct., Wheeling, West Virginia 26003

4. Defendant GACS, L.P. is a limited partnership with its principal place of business at 99 Aaron Way, Wheeling, West Virginia 26003.

5. Defendant Kevin P. Coyne, Sr. ("Mr. Coyne") is a resident of Wheeling, West Virginia 26003.

6. Defendant Doug Grayson ("Grayson") is a resident of Roysford, Pennsylvania.

7. Defendants Zachary and Kathleen Loughman ("the Loughmans") are residents of Ohio County, West Virginia and own residential property in Ohio County and/or live near hilltop property owned by Mr. Coyne and/or GC&P Development, LLC ("Subject Property").

## JURISDICTION AND VENUE

8. This Court has jurisdiction to enter a declaratory judgment pursuant to 28 U.S.C. § 1332, in that the parties in the Complaint are of diverse citizenship, and the amount in controversy exceeds $75,000.00 exclusive of interest and attorneys' fees.

9. This Court has jurisdiction to enter a declaratory judgment pursuant to 28 U.S.C. § 2201 and 2202, and Federal Rule of Civil Procedure 57.

10. Venue exists in this District pursuant to 28 U.S.C. § 1391(a) in that a substantial part of the events or omissions giving rise to this claim occurred within this District.

## FACTS

11. Underlying Defendants Mr. Coyne and/or GC&P Development, LLC own the Subject Property.

12. On or about September 8, 2015, Mr. Coyne, on behalf of GACS, completed a Commercial Insurance Application seeking a Commercial General Liability policy effective October 30, 2015 to cover vacant land located near Wheeling, West Virginia. *See Application Materials,* attached as Exhibit 1.

13. GACS completed a "vacant land application form" on September 9, 2010 in which it represented that there were no "activities" taking place on the property to be insured, "[i]ncluding but not limited to . . . logging [and] forestry work" and that there was no "real estate development on the land to be insured taking place or planned for the future[.]" *See* Exhibit 1.

14. GACS further represented that there would be no real estate development on the land taking place or planned for the future. *See* Exhibit 1.

15. GACS completed a second application on or about September 16, 2015, on which it listed the following properties to be covered by the new policy:

   a. 66.68 acres of vacant land, Greggsville;

   b. 20.16 acres of vacant land, Woodsdale;

   c. 4.01 acres of vacant land, Greggsville;

   d. 15 Woodlawn Court Rear;

   e. 196 Bethany Pike Rear; and

   f. 4.40 acres of vacant land in an unspecified location.

16. On October 16, 2015, by Deed recorded in Book 896, Page 737 in the Ohio County Deed Records ("Deed"), GC&P Development, LLC conveyed to GACS "all limestone, dolomite, sandstone, chert, gravel, sand, shale, slate, clay, rock and other commercial saleable materials or aggregates of such materials (collectively 'Stone'), and the overburden and fill material not

including Stone ('Overburden')" on four (4) tracts of land described by metes and bounds in the Deed.

17. Based upon the information provided by GACS, Nautilus issued Policy No. NN606138 on or about October 30, 2015, with a policy period from October 30, 2015 to October 30, 2016 and limits of $2,000,000 per occurrence and $4,000,000 aggregate. GACS paid a total premium of $2,039 for the Policy. *See Exhibit 2*, Policy.

18. In February 2016, Brett Andrews ("Mr. Andrews"), Vice President of Insurance Services with G&W Insurance Group, received an email dated February 18, 2016 that indicated that GC&P Development intended to widen an existing driveway at 196 Bethany Pike, clear land and remove felled timber, perform limited grading work for access and storm water management, and demolish improvements located at "196 Bethany" to allow driveway widening.

19. Mr. Andrews provided this email to Risk Placement Services, Inc., a surplus lines broker, and asked that the current coverage be amended to "contemplate the ongoing operations." Mr. Andrews also requested that GC&P Development and GC&P Aggregates be added as named insureds.

20. Nautilus reviewed the request and responded with a direct notice of cancellation based upon representations made in the application that there were no activities taking place on the Subject Property.

## UNDERLYING LAWSUIT

21. Plaintiffs are the owners of a home located at 14 Stratford Terrace in Wheeling, West Virginia.

22. Plaintiffs filed suit on February 22, 2019 against GC&P Development, GC&P Aggregates, GACS, Mr. Coyne, Grayson, and a "John Doe" defendant, representing the contractor or subcontractor who performed the timbering for GACS. *See Exhibit 3*, Complaint.

23. The Complaint alleged that Plaintiffs own real estate located near a 95-acre tract of land referred to as "the Coyne Property." The Complaint further alleged that by virtue of a deed recorded in Book 896, Page 737 in the Ohio County Clerk's office, GC&P Development conveyed to GACS the stone and fill material located on the Coyne Property. *Ex*. 3, ¶ 6.

24. The Complaint further alleges that Mr. Coyne and Grayson co-own the Coyne Property or, in the alternative, that Grayson is Mr. Coyne's business partner in the timbering activities. The John Doe defendant allegedly performed the timbering, excavation, hauling, and/or development on the Coyne Property for Defendants. *Ex*. 3, ¶¶ 7-8.

25. The Complaint alleges that "[s]tarting at a date presently unknown, but continuing throughout the year 2015 and into 2016," Defendants have engaged a joint venture with respect to commercial timbering on the Coyne Property. Defendants have allegedly been burning cuttings and debris from the timbering operations, building and maintaining access roads, excavating soil, grading and developing the property, altering the terrain, and stripping the hilltop of vegetation. Mr. Coyne has allegedly told other unidentified "individuals in the community" that he intends to quarry the limestone under the property and sell it for use in the fracking industry. *Ex*. 3, ¶¶ 10-12.

26. Defendants have allegedly refused to advise the City of Wheeling of their plans for the property and has concealed material information from city and state officials, all in an effort to circumvent the zoning laws and regulations, including but not limited to the Site Plan Review Process of the City of Wheeling. *Ex*. 3, ¶ 14.

27. The Complaint alleged that Defendants are "fully cognizant" of applicable laws that prohibit commercial timbering or the excavation of natural resources on the Coyne Property but nevertheless intentionally ignored these laws, engaged in deceptive acts and fraudulent concealment, and violated a "stop work order" issued by the City of Wheeling on or about December 21, 2015. *Ex*. 3, ¶ 15-16.

28. The Complaint further alleged that "Defendants have acted intentionally, willfully, and with conscious and reckless disregard to the rights of Plaintiffs and the entire Wheeling Community." *Ex*. 3, ¶ 17.

29. Count I of the Complaint asserted a negligence claim against Defendants on the grounds that they failed to use customary land development management and/or civil engineering, ignored best practices required by state law, city ordinance, or industry standards, and negligently cut timber and excavated soil on the Coyne Property, thereby rendering the hillside unstable. Plaintiffs have allegedly sustained property damage, are subject to increased risk of a landslide, and have experienced excessive runoff of water and mud as a result of the timbering and development. *Ex*. 3, Count I, generally.

30. Count II of the Complaint alleged maintenance of a public and private nuisance based on allegedly unlawful commercial timbering and development that allegedly caused property damage to residents in the area of the Coyne Property and by causing water and mud to run off onto Bethany Pike, also known as Route 88. Plaintiffs further claim that movement of heavy equipment has created traffic congestion on Bethany Pike and caused "an almost continual stream of water to flow upon numerous public roadways." *Ex*. 3, Count II, generally.

31. Count III of the Complaint asserted a claim for conspiracy and alleged that Defendants "have jointly engaged in a common fraudulent scheme and conspiracy against

6

Plaintiffs and the Wheeling community in general" to conceal the true nature of their development plans until city officials can no longer stop them from developing the Coyne Property for commercial use. *Ex*. 3, Count III, generally.

32. Count IV of the Complaint sought an injunction preventing further allegedly unlawful development of the Coyne Property and directing Defendants to "engage in and maintain water control and stabilization measures." *Ex*. 3, Count IV, generally.

33. Plaintiffs also seek compensatory damages for property damage, inconvenience, and emotional distress, as well as punitive damages for Defendants' allegedly "intentional, conscious and reckless disregard" for their rights. Plaintiffs also seek to recover attorneys' fees and litigation costs.

## COUNT I
## MISREPRESENTATION IN THE APPLICATION

34. Paragraphs 1 through 33 are incorporated herein as if set forth fully.

35. No coverage exists under the Nautilus Policy because the insured was conducting operations on the property or planned to develop the property such that the questions answered on the application were false, amounting to a material misrepresentation.

36. Pursuant to West Virginia Code § 33-6-7, a misrepresentation in an application for an insurance policy will prevent recovery under the policy where the incorrect statements are:

    a. Fraudulent; or

    b. Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

    c. The insurer in good faith would either have not issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

37. The application describes the property as "vacant land."

38. The application on or about September 8, 2015, by Mr. Coyne, on behalf of GACS, requested that the Policy cover "vacant land" located near Wheeling, West Virginia and describes the property to be insured as "vacant land."

39. Mr. Coyne, on behalf of GACS, also completed a second application on or about September 16, 2015, on which it listed the following properties to be covered by the new policy:

    i.    66.68 acres of *vacant land*, Greggsville;

    ii.    20.16 acres of *vacant land*, Woodsdale;

    iii.    4.01 acres of *vacant land*, Greggsville;

    iv.    15 Woodlawn Court Rear;

    v.    196 Bethany Pike Rear; and

    vi.    4.40 acres of *vacant land* in an unspecified location.

40. The vacant land application completed by Mr. Coyne on behalf of GACS was a "Vacant Land" Application Form and represented that there were no "activities" taking place on the property to be insured, "[i]ncluding but not limited to . . . logging [and] forestry work" and that there was no "real estate development on the land to be insured taking place or planned for the future[.]"

41. Based upon the information provided by GACS, Nautilus issued the Policy.

42. Counsel for the insured has produced a Site Access and Contract Timber Clearing Agreement between Funka Forest Products and GC&P Development dated May 29, 2105, which assumedly means 2015.

43. The Agreement provided for timber clearing services on property located at "194 Rear Bethany Pike."

44. Pursuant to the Site Access and Contract Timber Clearing Agreement, Funka Forest Products was to commence timber clearing before June 8, 2015.

45. Counsel also provided a Site Access and Removal of Fill Material Agreement between APS and GC&P Development dated December 15, 2015. This Agreement indicated that APS would perform fill material excavation, site grading, and site restoration pursuant to WVDEP Permit No. WVR106373.

46. As such, the operations ongoing at the time of the policy application, which was signed on September 8, 2015, prevented the property from being considered "vacant land" as the terms are commonly understood.

47. As a result, the Nautilus Policy excludes coverage. Under W. Va. Code §33-6-7, a misrepresentation in an application for an insurance policy will prevent recovery under the policy where the "insurer in good faith would [not have] issued the policy . . . if the true facts had been made known to the insurer as required either by the application for the policy or otherwise."

48. If the questions posed to the insured had been answered truthfully, Nautilus would not have issued the policy on the same terms, if at all.

49. The insured's objectively material misrepresentations in the policy application defeats coverage under the Policy.

Therefore, no coverage exists due to a material misrepresentation to Nautilus.

**COUNT II**
**THE ALLEGATIONS IN THE UNDERLYING PLAINTIFFS' COMPLAINT FALL OUTSIDE THE COVERAGE GRANT**

50. Paragraphs 1 through 50 are incorporated herein as if set forth fully.

51. The relevant Policy language states:

*SECTION I - COVERAGES*

9

> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> ***1. Insuring Agreement***
> *[. . .]*
> > **b.**  This insurance applies to "bodily injury" and "property damage" only if:
> >
> > > **(1)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> *See* Exhibit 2 at GC 00 01 12 04 (Page 1 of 15).
>
> *[. . .]*
> **SECTION V - DEFINITIONS**
> *[. . .]*
> **3.**  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
> *[. . .]*
> **13.**  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
> *[. . .]*
> **17.**  "Property damage" means:
> **a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> **b.**  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
> *[. . .]*
> **22.**  "Your work":
> **a.** Means:
> > (1) Work or operations performed by you or on your behalf; and
> > (2) Materials, parts or equipment furnished in connection with such work or operations.
>
> *See* Exhibit 2 at GC 00 01 12 04 (Page 12, 14-15 of 15).

52.  The gravamen of the allegations against GC&P Development, LLC in the Complaint is that Defendants concealed their development plans from city and state officials, and circumvented zoning laws that prohibit timbering on the Subject Property. *Ex*. 3, ¶¶ 1-17.

53. Thus, the conduct alleged in the Complaint is not accidental or fortuitous and therefore, falls outside the definition of an "occurrence" under the Policy.

54. Count I of the Complaint alleges negligence in connection with the excavation and timbering work performed on the property.

55. Defective work does not constitute an "occurrence" under a CGL policy because the conduct was "deliberate, intentional, expected, desired, or foreseen" by the insured.

56. Further, although Count I is characterized as a "negligence" Count, the underlying facts that support the count all allege deliberate, calculated, intentional conduct.

57. Plaintiffs are not permitted to plead their way into coverage by injected a negligence count into a Complaint which is clearly based on intentional misconduct.

58. Count II of the Complaint alleges that the allegedly unlawful commercial timbering and development constitutes a public nuisance by causing property damage to residents in the area of the Subject Property and by causing water and mud to run off onto Bethany Pike, also known as Route 88, and further claims that movement of heavy equipment has created traffic congestion on Bethany Pike.

59. The allegations of nuisance and traffic congestion on the roadway do not fall within the definition of "property damage" or "bodily injury."

60. Therefore, the allegations in Count II fall outside the coverage grant.

61. Count III of the Complaint alleges a fraudulent scheme and conspiracy to hide and conceal Defendants' true development plans from city officials. It alleges that Defendants were aware of the restrictions but nevertheless proceeded with the work despite this knowledge.

62. Thus, Count III of the Complaint alleges a complicit, fraudulent, knowing violation of the restrictions which is not an "occurrence" under the Policy.

63. This Court has previously concluded that a Complaint filed by different homeowners against GC&P Development, LLC, GC&P Aggregates, LLC, GACS, L.P, and Kevin P. Coyne, Sr., based on the exact same conduct does not allege an occurrence, and therefore, is not covered by the same Nautilus Policy.

## COUNT III
## THE POLICY DOES NOT PROVIDE COVERAGE FOR INJUNCTIVE RELIEF

64. Paragraphs 1 through 63 are incorporated herein as if set forth fully.

65. The relevant Policy language provides:

*SECTION I - COVERAGES*

*COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

*1. Insuring Agreement*

*a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" and "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.*

*See* Exhibit 2 at GC 00 01 12 04 (Page 1 of 15).

66. Count IV of the Complaint seeks injunctive relief rather than monetary damages.

67. There is no coverage for these claims under the Policy, as such a claim falls outside of the coverage grant. *See generally One Gateway Assocs. v. Westfield Ins. Co.,* 184 F. Supp. 2d 527 (S.D.W. Va. 2002) (explaining that an insurer has no duty to afford coverage, defense, or indemnity in a claim for injunctive relief).

## COUNT IV
## THE ALLEGATIONS IN THE UNDERLYING COMPLAINT FALL WITHIN THE CONSTRUCTION OPERATIONS EXCLUSION

68. Paragraphs 1 through 67 are incorporated herein as if set forth fully.

69.     The Policy contains an Exclusion for All Construction Operations, which provides as follows:

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

**EXCLUSION – ALL CONSTRUCTION OPERATIONS**

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

**A.**     *The following exclusion is **added** to **2.  Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability, Coverage B – Personal and Advertising Injury Liability** and **Coverage C – Medical Payments:***

*This insurance does not apply to:*

*1.     "Bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of any "construction operations" performed by you or on your behalf.*
*2.     Costs and expenses to investigate or defend any claim, "suit" or payment of any fine or penalty for paragraph **A.1.** above.*

**B.**     *This exclusion applies to:*

*1.     "Bodily injury", "property damage", "personal and advertising injury" and medical payments for which any insured may be obligated to pay damages by reason of the assumption of liability in any contract or agreement, regardless of whether such contract or agreement is an "insured contract"; or*
*2.     Any obligation to share damages with or repay someone else who must pay damages.*

**C.**     *The following definitions are **added** to the **Definitions** section:*

*1.     "Construction" means the act of building by putting together materials and parts to create a structure including, but not limited to, building the foundations, framework, floors, walls, ceilings, trusses or roof, or debris removal.*
*2.     "Construction operations" means, with respect to real property, surveying, site preparation, grading of land, excavation, debris removal, soil compaction, tree clearing, demolition, reconstruction, renovation, alteration, remodeling, repair, service, improvement and any other "pre-construction" and any other "construction" and any other "post-construction."*
*3.     "Post-construction" means those activities that occur after the issuance of the notice of completion or certificate of occupancy, whichever comes first.*

> **4.** *"Pre-construction" means those activities that must occur prior to the actual start of the "construction" process including, but not limited to, grading of land, inspection, land surveying, site preparation, soil compaction, tree clearing or installation of driveways, parking areas, roads, sidewalks, and utilities.*

*See* Exhibit 2 at *Endorsement L293 (07/10)*.

70. Count I of the Complaint alleges that Defendants failed to exercise reasonable care and skill in the timbering and excavation operations performed on the property.

71. The Subject Property was being prepared for development through site preparation and excavation which falls squarely within the definition of "Construction Operations."

72. This Construction Operations Exclusion defeats coverage for all construction-related claims.

## COUNT V
## INTENTIONAL INJURY EXCLUSION

73. Paragraphs 1 through 72 are incorporated herein as if set forth fully.

74. The Commercial General Liability Coverage Form, Section I states:

***SECTION I - COVERAGES***

***COVERAGE A***
***BODILY INJURY AND PROPERTY DAMAGE LIABILITY***

2. **Exclusions**

   This insurance does not apply to:

   **a.  Expected Or Intended Injury**

   *"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons and property.*

*See* Exhibit 2 at GC 00 01 12 04 (Page 2 of 15).

75. Count I of the Complaint alleges intentional timbering and/or excavation, which caused damage to the Loughmans' property.

76. Count III of the Complaint alleges that Defendants engaged in a fraudulent scheme to hide and conceal their true development plans from city officials.

77. Thus, Defendants' conduct and the Loughmans' alleged damages were expected or intended from the standpoint of the insureds.

78. Therefore, this exclusion defeats coverage under the Policy.

## COUNT VI
## PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION

79. Paragraphs 1 through 78 are incorporated herein as if set forth fully.

80. The Policy contains the following Punitive or Exemplary Damages Exclusion:

*THIS EXCLUSION CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.*

***EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGES***

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*
*LIQUOR LIABILITY COVERAGE PART*
*OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART*
*PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART*

*The following exclusion is added to 2. Exclusions of Section I:*

*This insurance does not apply to punitive or exemplary damages.*

See Exhibit 2 at *Endorsement L217 (06/07)*.

81. Underlying Plaintiffs' Second Amended Complaint seeks an award of punitive damages as a result of the Underlying Defendants' actions.

82. An insurance company may decline to insure against punitive damages by an express exclusion in its policy to that effect. *See Hensley v. Erie Ins Co.*, 283 S.E.2d 227, 230 (W. Va. 1981); *see also State ex rel. State Auto Ins. Co. v. Risovich*, 511 S.E.2d 498 (W. Va. 1998).

83. Here, the punitive damages exclusion excludes coverage for the damages sought in the Underlying Plaintiffs' Second Amended Complaint.

## COUNT VII
## CONTRACTORS AND SUBCONTRACTORS EXCLUSION

84. Paragraphs 1 through 83 are incorporated herein as if set forth fully.

85. The Policy contains the following Contractors and Subcontractors Exclusion:

*THIS EXCLUSION CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.*

*EXCLUSION – CONTRACTORS AND SUBCONTRACTORS*

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*The following exclusion is **added** to **2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability, Coverage B – Personal And Advertising Injury Liability** and **Coverage C – Medical Payments**:*

> *This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of work performed by any contractor or subcontractor whether hired by or on behalf of any insured, or any acts or omissions in connection with the general supervision of such work.*

*See* Exhibit 2 at *Endorsement L282 (07/10)*.

86. Count I of the Complaint alleges that Defendants failed to exercise reasonable care and skill in the timbering and excavation operations performed on the property while it was being prepared for development through site preparation and excavation.

16

87. Plaintiffs further include John Doe as a defendant and allege that he or it is a timbering, excavation or development company who performed the timbering, development, hauling or excavation for the Defendants. *Ex.* 3, ¶ 9.

88. Any acts or omissions by any contractor or subcontractor hired by or on behalf of the insured to perform timbering and excavation operations falls squarely within the Contractors and Subcontractors Exclusion.

89. Thus, the Exclusion excludes coverage for any damages sought related to work performed by contractors or subcontractors in the Complaint.

## COUNT VIII
## NO DUTY TO DEFEND

90. Paragraphs 1 through 89 are incorporated herein as if set forth fully.

91. The relevant Policy language provides:

### SECTION I - COVERAGES

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

*1. Insuring Agreement*

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" and "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

*See* Exhibit 2 at GC 00 01 12 04 (Page 1 of 15).

**SECTION V - DEFINITIONS**
*[. . .]*
**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
*[. . .]*
**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17

> [. . .]
> 
> **17.** *"Property damage" means:*
> 
> > **a.** *Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*
> > 
> > **b.** *Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*
> 
> 18. *"Suit" means a civil proceeding in which damages because of "bodily injury, "property damage" or "personal and advertising injury" to which this insurance applies are alleged.  "Suit" includes:*
> 
> > a.  *An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or*
> > 
> > b.  *Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.*

*See* Exhibit 2 at GC 00 01 12 04 (Page 12, 14-15 of 15).

92. For the reasons set forth above in Counts I-VIII, there is no coverage for the allegations in the Complaint.

93. Thus, Nautilus has no duty to defend the Defendants against the allegations in the Complaint.

WHEREFORE, Nautilus Insurance Company respectfully requests that this Court enter an Order declaring:

1. That based on the language in the Policy, the claims asserted by the Loughmans in their Complaint are not covered by the Policy and therefore, Nautilus has no duty to defend or indemnify Defendants for the allegations therein;

      2.      That based upon the language in the Policy that the claims asserted in any administrative action are not covered by the Policy and therefore, Nautilus has no duty to defend or indemnify Defendants for the allegations contained therein; and

      3.      For such further relief as this Court deems proper.

**NAUTILUS INSURANCE COMPANY,**

**By counsel,**

/s/ Lee Murray Hall
Lee Murray Hall, Esquire (WVSB #6447)
Sarah A. Walling, Esquire (WVSB #11407)
JENKINS FENSTERMAKER, PLLC
Post Office Box 2688
Huntington, West Virginia  25726-2688
Phone: (304) 523-2100
Fax: (304) 523-2347